UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Michael Anthony

   v.                                           Civil No. 12-cv-156-JL

David Dionne, Superintendent,
Hillsborough County House of
Corrections, et al.[1]


### REPORT AND RECOMMENDATION

Michael Anthony filed a complaint (doc. no. 1) asserting violations of his First and Fourteenth Amendment rights during his pretrial detention at the Hillsborough County House of Corrections ("HCHC"). The matter is before the court for preliminary review pursuant to 28 U.S.C. § 1915A(a) and United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

### Standard for Preliminary Review

Pursuant to LR 4.3(d)(2) and 28 U.S.C. § 1915A(a), the magistrate judge conducts a preliminary review of pro se in forma pauperis complaints before defendants have an opportunity

---

[1] Defendants named in the complaint are Hillsborough County House of Corrections ("HCHC") Superintendent David Dionne; HCHC Field Training Officer Rodrigues, whose first name is unknown ("FNU"); HCHC Sgt. FNU Ballis; HCHC Nurse FNU Barnes; Dr. FNU Masewic; and HCHC Nurse Supervisor Denise Ryan.

to respond to the claims. The magistrate judge may direct service of the complaint, or, as appropriate, recommend to the district judge that one or more claims be dismissed if: the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b); LR 4.3(d)(2).

In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010). To determine plausibility, the court treats as true all well-pleaded factual allegations, and construes all reasonable inferences drawn therefrom in the plaintiff's favor. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

Background

On February 10, 2012, Michael Anthony, a pretrial detainee at the HCHC, was removed from his cell in Unit 2B/Maximum Security and transferred to a punitive segregation cell in the same unit by a supervising officer, Sgt. Balles, and two Field Training Officers, Rodrigues and McBournie.  Once at the new cell, Rodrigues, who had control of Anthony's arms, ordered Anthony, who was handcuffed and shackled, to kneel against the wall.  Anthony alleges that he complied.  Anthony asserts that Rodrigues started to taunt Anthony, making statements along the lines of: "You think you're a tough guy – we'll see how tough you are."

Anthony asserts that Rodrigues then pulled Anthony's handcuffed wrists upwards with such force that Anthony was lifted entirely off the ground.  Anthony asked Rodrigues: "What the f--- do you think you're doing?" and stated that he thought Rodrigues was out of control.

Anthony asserts that Rodrigues then slammed Anthony's face against the wall.  At that point, McBournie stepped in and said that he would take control of Anthony.  McBournie removed Anthony's handcuffs and shackles.  Anthony asserts that McBournie has since said that he intervened because he believed that Rodrigues was out of control.  McBournie has also stated

that Balles verbally reprimanded Rodrigues for his behavior toward Anthony.

Immediately after the assault, a nurse was sent to Anthony's cell to assess Anthony's injuries, but, Anthony alleges, he was so upset he refused to speak with the nurse. Anthony asserts that he submitted in excess of fifteen request slips seeking medical care for his jaw.  Anthony alleges he was told that because he had refused care on February 10, he would not be provided with any care for his injuries.  Approximately a week and a half after the February 10 incident, an officer on Anthony's unit asked HCHC Nurse Barnes to look at Anthony's face, which Anthony asserts was obviously swollen.  Barnes looked at Anthony and allegedly stated that Anthony should be seen by the medical department.  Anthony claims that at the time this action was filed, six weeks after Nurse Barnes made that statement, he had not been seen by anyone in the medical department, and numerous request slips he filed during that time went unanswered.  Anthony states that he suffers pain in his jaw, but that he has not received any treatment for pain.

Anthony also states that he filed multiple grievances against both Rodrigues for the assault, and Balles, for failing, as the supervising officer, to intervene on Anthony's behalf once Rodrigues began to use excessive force.  Anthony alleges

that he has not received any response to his grievances, except that HCHC Superintendent David Dionne threatened to write Anthony up on a disciplinary charge for abusing the grievance process if Anthony should file any further grievances.

## Discussion

I.  Excessive Force

Anthony asserts an excessive force claim against Rodrigues. The "Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); see also Bell v. Wolfish, 441 U.S. 520, 535-59 (1979) (detainee's Fourteenth Amendment right not to be subjected to excessive force is at least as protective as analogous Eighth Amendment right of convicted prisoners). The applicable Eighth Amendment standard is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). The relevant factors for the court to consider in evaluating an excessive force claim are: the need for force; the relationship between that need and the amount of force applied; the extent of any injury inflicted; the "threat 'reasonably perceived by the responsible officials;'" and the "'efforts made to temper the

severity of a forceful response.'" Id. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Anthony states that he was complying with Rodrigues's directions at the time the assault began.  Nothing in the complaint provides any basis upon which the court could infer that Anthony provoked the assault in any manner.  Anthony states that his face was slammed against the wall while he was handcuffed, shackled, and being held by the wrists.  Anthony states he suffered swelling, pain, and a possible dislocation of his jaw.  At this stage of the proceedings, the facts asserted are sufficient to state a claim for excessive force.  Accordingly, the court directs service of the excessive force claim on Rodrigues in an order issued simultaneously with this report and recommendation (the "Simultaneous Order").

II.  Failure to Intervene

Anthony asserts that as Rodrigues's supervising officer, Balles, had a duty to intervene on Anthony's behalf as soon as Rodrigues lifted Anthony by his wrists.  "[A] police officer has a duty to act when he sees another officer using excessive force against an arrestee or pretrial detainee if the officer could realistically prevent that force and had sufficient time to do so." Davis v. Rennie, 264 F.3d 86, 113 (1st Cir. 2001).  The

First Circuit has suggested that this principle applies with equal force to corrections officers.  See id. at 114 ("For the same reason, at least one court has held that a prison guard must intervene when another guard uses excessive force against a prisoner").  The duty to intervene is triggered "only when an officer has 'a realistic opportunity to intercede.'"  Farrah v. Gondella, 725 F. Supp. 2d 238, 246 (D. Mass. 2010) (quoting Davis, 264 F.3d at 98 n.10).

    Anthony asserts that when Rodrigues lifted him in the air, Balles had the opportunity and, as the supervising officer, the authority, to intervene to stop the assault before Rodrigues slammed his face into the wall.  Further, McBournie's later statements, if true, indicate that Balles was aware of the excessive nature of the assault.  Anthony has asserted sufficient facts at this stage to state a claim against Balles for failing to intervene on Anthony's behalf when Rodrigues began to use excessive force against Anthony.  The court directs service of this claim on Balles in the Simultaneous Order.

III. Denial of Medical Care

    In order to state a constitutional claim for the denial of constitutionally adequate medical care, an inmate must allege that defendants have committed "acts or omissions . . .

sufficiently harmful to evidence deliberate indifference to serious medical needs." Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011) (internal quotations and citation omitted). A serious medical need "'is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990)).

The plaintiff must also demonstrate that the defendant acted with deliberate indifference in failing to provide adequate care to address plaintiff's serious medical need. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). "Deliberate indifference . . . may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'" Ruiz-Rosa v. Rullán, 485 F.3d 150, 156 (1st Cir. 2007) (quoting Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)).

Anthony alleges that he repeatedly sought medical care to treat his jaw, which was swollen for a period of time and remains painful. Anthony also suspects that his jaw may have been dislocated because it "pops" when he moves it while eating or yawning. Standing alone, these facts fail to assert a serious medical need, or that Anthony faces a substantial risk

8

of serious harm without medical treatment.  However, given the serious assault alleged and Anthony's ongoing symptoms, the court cannot determinatively conclude that Anthony could not allege facts sufficient to establish a serious medical need.  Accordingly, in the Simultaneous Order, Anthony is given leave to amend his complaint to assert facts showing that the injury to his jaw constitutes a serious medical need.

Anthony has not identified any individual to whom his requests for medical care were addressed and whether the requests put any individual on notice that he had a serious medical need.  Anthony states only that Nurse Barnes saw that his face was swollen and opined that he should be seen in the medical department.  Those facts, by themselves, are insufficient to demonstrate that either Nurse Barnes or any other individual was aware of facts from which she drew, or should have drawn, an inference that Anthony was at risk of serious harm if he was not provided with further testing and treatment, or that she denied him treatment.  Anthony names Dr. Matthew Masewic and Nurse Denise Ryan as defendants to this action, but has not identified what either of them did or failed to do to violate his rights.  Accordingly, Anthony has not at this time alleged that any defendant acted with deliberate indifference in denying him medical care.

If, however, Anthony can identify one or more defendants to this claim, and can assert facts showing that the defendant or defendants acted with deliberate indifference in failing to provide Anthony with medical care, he may be able to state a claim upon which relief might be granted. Accordingly, in the Simultaneous Order, the court grants Anthony leave to amend his complaint to name a defendant or defendants to this claim, and to state the factual basis upon which those defendants might be held liable for denying Anthony constitutionally adequate medical care.

IV. Retaliation

Anthony asserts that Supt. Dionne violated his First Amendment rights by threatening him with disciplinary action in response to Anthony filing grievances. To state a claim for retaliation for the exercise of First Amendment rights, an inmate must allege: (1) that the conduct which led to the alleged retaliation was protected by the First Amendment; (2) that he suffered adverse action at the hands of the prison officials; and (3) that there was a causal link between the exercise of his First Amendment rights and the adverse action taken. See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).

To satisfy the second element of a retaliation claim, Anthony must show that defendants took an adverse action against him. <u>De minimis</u> reactions to protected speech will not satisfy that requirement. <u>See</u> <u>Morris v. Powell</u>, 449 F.3d 682, 685-86 (5th Cir. 2006). A defendant's reaction to protected speech is not <u>de minimis</u>, however, if defendant's conduct would deter an individual of ordinary firmness from exercising his or her First Amendment rights. <u>See</u> <u>id.</u> Consideration of whether a disciplinary charge filed in response to protected speech is an adverse act therefore requires an assessment of whether the charge and its disposition would be capable of deterring an inmate from exercising his or her First Amendment rights. <u>See, e.g.</u>, <u>Bridges v. Gilbert</u>, 557 F.3d 541, 555 (7th Cir. 2009) ("single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action"); <u>Gayle v. Gonyea</u>, 313 F.3d 677, 682 (2d Cir. 2002) (inmate subjected to retaliatory disciplinary charges and subsequent punishment that would deter an inmate of ordinary firmness from exercising his First Amendment rights may be entitled to relief under section 1983 (citing <u>Franco v. Kelly</u>, 854 F.2d 584, 590 (2d Cir. 1988))).

Here, Anthony asserts that Dionne threatened to file a disciplinary charge against him if he continued to file

11

grievances.  The First Circuit has found that an inmate of "ordinary firmness" would not be deterred in the exercise of his First Amendment rights where a disciplinary charge was filed against him, provided he could defend himself against the charge and there is no indication that such a defense would be futile.  See Starr v. Dube, 334 F. App'x 341, 343 (1st Cir. 2009).  Here, Anthony has not alleged that he has been charged, only that he has been threatened with a charge.  No facts in the complaint suggest that if he were to be charged, he would necessarily be subject to significant punishment, or that he would be unable to defend himself at a hearing on the charge.  Accordingly, Anthony has not stated sufficient facts to allege that he has been subject to an adverse act of sufficient severity to support a retaliation claim.  Accordingly, the retaliation claim should be dismissed.

## Conclusion

For the foregoing reasons, in the Simultaneous Order, the court directs that the excessive force and failure to intervene claims asserted in the complaint be served on defendants Rodrigues and Balles, and grants Anthony leave to amend his inadequate medical care claim.  The court recommends that the

remaining claims and defendants identified in this action be dismissed.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

September 10, 2012

cc: Michael Anthony, pro se

LBM:jba